**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

Richard D. Gelesky, on behalf    :     Case No. 1:10-cv-899
of Himself and Others Similarly   :
Situated,                          :
                                     :
     Plaintiff,                 :
                                       :
vs.                                     :
                                       :
AK Steel Corporation Pensions     :
Agreement Plan, and AK Steel      :
Corporation Benefit Plans         :
Administrative Committee,        :
                                       :
     Defendants.             :


<u>**ORDER**</u>

Plaintiff, Richard D. Gelesky, alleges in his complaint that
Defendants, his former employer's pension plan and its
administrative committee, failed to properly calculate his lump-
sum pension benefit. For himself and on behalf of a putative
class, he brings claims under ERISA seeking additional benefits.
(Doc. 1) Defendants, AK Steel Corporation Pension Agreement Plan
and AK Steel Corporation Benefit Plan Administrative Committee,
have moved to dismiss Plaintiff's claims as time-barred. (Doc.
11) Plaintiff opposes the motion (Doc. 18), and Defendants have
filed a reply. (Doc. 19) Plaintiff also sought leave to amend
his complaint, which Defendants opposed as futile.

For the following reasons, Defendants' motion to dismiss this action is **GRANTED**.

I.   <u>Factual Background</u>

Plaintiff, Richard D. Gelesky, is a resident of Pennsylvania and was an employee of Armco, Inc. and AK Steel Corporation (which merged with Armco) at a Pennsylvania plant from 1958 until he retired in June of 1999.  Plaintiff was a participant in the AK Steel Corporation Pension Agreement Plan, a cash balance pension plan administered in West Chester, Ohio.  When he retired, he elected to receive a lump-sum payment of his pension benefits.  As the pension plan was a cash balance plan, Plaintiff received a payment equal to his hypothetical cash balance. Plaintiff essentially contends that he should have been paid more because the plan did not perform what has come to be known as the "whipsaw" calculation.

This issue was addressed in <u>West v. AK Steel Corp.</u> <u>Retirement Accumulation Pension Plan</u>, 484 F.3d 395 (6th Cir. 2007).  There, the plaintiffs had elected to receive lump-sum payments from their AK Steel pension plan.  (The plan at issue in this case is a different cash balance plan, but it provides that lump-sum payments will be equivalent to the employee's hypothetical cash balance, as was true for the plan at issue in <u>West</u>.)  Plaintiffs challenged the calculation, contending it violated ERISA's actuarial equivalence requirements.  The Sixth

Circuit affirmed this Court's decision that in calculating the
plaintiffs' lump sum payments, the value of the hypothetical
balance must be projected to retirement age using the plan's
interest crediting rate, and then discounted back to present
value using rates published by the Internal Revenue Service.  484
F.3d at 410.  When the discount rate is less than the crediting
rate (as it was in West), the employee receives a larger payment
than the balance of his hypothetical account.  This has come to
be known as the "whipsaw calculation."[1]  Id. at 401.

II.  Procedural History

Plaintiff was a member of the proposed class in the lawsuit
filed against Defendants on July 2, 2009, entitled Schmidt v. AK
Steel Corporation Pension Agreements Plan, No. 1:09-CV-464 (S.D.
Ohio 2009).  The plan at issue covers certain union employees at
the former Armco/AK Steel plant in Pennsylvania, a plant that was
sold by AK Steel sometime in 2002.  After this Court denied
Defendants' motion to dismiss the complaint and rejected the
argument that the four-year statute of limitations in 28 U.S.C.
§1658(a) applied, the parties reached a settlement.  Defendants
agreed to pay additional benefits to class members who had
received lump-sum distributions within six years prior to the

---

[1] The Pension Protection Act of 2006, Pub. L. No. 109-280,
120 Stat. 780, defines the hypothetical account balance of a cash
balance plan as the present value of the accrued benefit for all
lump-sum payments made after August 17, 2006.  The whipsaw
calculation will no longer be required after that date.

-3-

date the suit was filed.  All other putative class members in
Schmidt were excluded from the settlement, and this lawsuit was
filed to prosecute their claims.  The parties agree that the
Court should treat this suit as if it had been filed on July 2,
2009 for purposes of the statute of limitations.

Plaintiff's complaint in this case proposes a class
definition of all participants who retired after January 1, 1995,
and who received lump-sum payments of retirement benefits between
January 1, 1995, and July 2, 2003. (Doc. 1 at ¶34)  Count One
alleges that defendants violated certain Plan provisions that
required the Plan to conform to ERISA and Internal Revenue Code
("IRC") requirements.  Count Two alleges that the plan violated
ERISA when it calculated Plaintiff's lump sum without the
whipsaw.  Count Three, brought under 29 U.S.C. §502(a)(3), seeks
to reform the Plan to require it to perform the whipsaw
calculation.

Defendants moved to dismiss pursuant to Rule 12(b)(6),
arguing the claims are time-barred. (Doc. 11)  Defendants contend
that the most analogous statute of limitations is that contained
in Ohio Rev. Code 2305.07, which provides a six-year period for
actions based upon statutory liability.  That period, according
to Defendants, began when Plaintiff received his lump sum payment
in June 1999.  Defendants also contend that Plaintiff failed to
exhaust his administrative remedies.  Plaintiff disagrees,

-4-

arguing that Ohio's fifteen year contract limitations period applies, and that his claim did not accrue until, at the earliest, 2008 when he learned about the whipsaw issue. He also argues that exhaustion should be excused because it would have been futile.

Plaintiff was granted leave to file an amended complaint along with his opposition to Defendants' motion, which adds allegations he contends bolster his argument that his claims arise from Plan terms, and that his claim accrued in 2008. The Magistrate Judge specifically deferred to this Court for a decision on the merits of Defendants' contention that the amended complaint is futile, as those arguments are intertwined with the merits of Defendants' pending motion. (See Doc. 22)

The Court agrees with Plaintiff's argument that administrative exhaustion is not required. As this Court found in West, appealing to the Plan would undoubtedly result in the same calculation being performed again, with no change in Plaintiff's lump sum calculation. No amount of administrative review would alter that result. But the Court rejects Plaintiff's arguments about the appropriate statute of limitations.

III. Standard of Review

In reviewing a motion to dismiss under Fed. R. Civ. Proc. 12(b)(6), the Court accepts the well-pleaded factual allegations

-5-

of the complaint. A claim will survive if those allegations are "... enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Jones v. City of Cincinnati, 521 F.3d 555, 559 (6th Cir. 2008) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007)).

In Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009), the Supreme Court expressly held that a complaint will survive a Rule 12 challenge only if its well-pleaded factual allegations are sufficient to state a claim for relief that is plausible on its face. Facial plausibility requires pleading facts that permit a reasonable inference that the defendant is liable for the alleged misconduct. If a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id. at 1949 (quoting Twombly, 550 U.S. at 556-557).

Where the complaint refers to or incorporates contract terms, the Court may consider those documents when appended to a motion to dismiss. See Greenberg v. Life Ins. Co., 177 F.3d 507, 514 (6th Cir. 1999) (considering the text of insurance policies referred to throughout the complaint and central to the claims as part of a motion to dismiss, even though not included in the complaint).

IV.  <u>Discussion</u>

Plaintiff's claims are brought under ERISA §§ 502(a)(1)(B)
to recover benefits due or to enforce rights under the terms of a
plan, and 502(a)(3), seeking equitable relief.  ERISA lacks a
specific statute of limitations for these provisions, and the
Court must apply the most analogous state law limitations period.
<u>Redmon v. Sud-Chemie Inc. Retirement Plan for Union Employees</u>,
547 F.3d 531, 535 (6th Cir. 2009), quoting <u>Meade v. Pension
Appeals & Review Comm.</u>, 966 F.2d 190, 194-95 (6th Cir. 1992).
Accrual of an ERISA claim is a matter of federal common law.  A
cause of action accrues "when a fiduciary gives a claimant clear
and unequivocal repudiation of benefits."  <u>Redmon v. Sud-Chemie</u>,
547 F.3d at 538, quoting <u>Morrison v. Marsh & McLennan Cos.</u>, 439
F.3d 295, 302 (6th Cir. 2006).

A.   <u>Statute of Limitations</u>

Plaintiff urges the Court to follow <u>Meade</u> and apply Ohio's
fifteen-year contract limitations period, while Defendants urge
application of the period for claims based on statutory
liability.  This Court recently addressed an almost identical
issue and concluded that Ohio's six-year statute applied to ERISA
claims seeking additional "whipsaw" benefits from a cash balance
pension plan.

In <u>Moody v. Turner Corporation</u>, No. 1:07-CV-692 (S.D. Ohio),
defendants initially moved to dismiss one of the plaintiff's

claims as time-barred under Ohio Rev. Code 2305.07. This Court noted that in <u>Meade v. Pension Appeals & Review Comm.</u>, 966 F.2d 190 (6th Cir. 1992), the Sixth Circuit held that the most analogous statute for ERISA benefit claims was Ohio's fifteen-year contract statute. <u>Meade</u> involved a claim for disability benefits provided under an ERISA-governed pension plan that included total and permanent disability benefits for employees who met specific requirements, including that the employee satisfy the plan's definition of "permanently and totally disabled." The plan found that the employee failed to satisfy that definition and denied benefits. The district court applied ERISA's three-year statute of limitations applicable to breach of fiduciary claims, which the Sixth Circuit reversed. The appellate court found that Ohio's contract limitations period applied to his claim for benefits, noting that his complaint alleged that he was denied benefits he was entitled to receive under the express terms of the pension plan. A similar conclusion was reached in <u>Santino v. Provident Life & Acc. Ins. Co.</u>, 276 F.3d 772, 776 (6th Cir. 2001), noting that Michigan's six-year contract limitations period would generally apply to a claim for disability benefits, but also enforcing an insurance policy's express provision requiring any claim to be brought within three years of written proof of loss.

In Moody, the plaintiff had received the amount in his
hypothetical cash balance account, as prescribed by the plan
terms.  There was no allegation that the plan violated an express
plan term by calculating his lump sum benefit in this fashion,
which the Court found distinguished the result reached in Meade.
This Court further noted that the issue of the most analogous
statute of limitations had not been addressed by the Sixth
Circuit in West, nor in several other appellate decisions
concerning cash balance "whipsaw" claims.

This Court then noted the recent decision in Fallin v.
Commonwealth Industries, Inc. Cash Balance Plan, 521 F.Supp.2d
592 (W.D. Ky 2007), where the district court applied Kentucky's
analogous statute for actions based on statutory violations to
plaintiff's ERISA claims challenging amendments to their
employer's plan that resulted in an underpayment of their lump
sum benefits.  This Court found Fallin's reasoning intriguing,
but concluded that Meade was binding authority.  (See Moody, Doc.
25, Aug. 6, 2008 Order denying defendant's motion to dismiss, at
pp. 23-24.)

After that Order was entered, the Sixth Circuit decided
Redmon.  There, a widow alleged that her deceased husband's
pension plan failed to adequately advise her about the
consequences of consenting to her husband's election of a single
life annuity at the time he retired.  Her husband died a short

time after retiring, and the plan stopped paying benefits.  Some

six years later, she submitted a claim to the plan, which was

denied as untimely.  She then filed an ERISA suit seeking

survivor benefits.  The Sixth Circuit affirmed the district

court's application of a Kentucky statute of limitations for a

liability created by statute.  The widow did not deny that she

signed the single life annuity waiver that ERISA requires, but

alleged that it was invalid because the plan did not properly

advise her.  The Sixth Circuit held that "her claim for benefits

can be said to arise more specifically from ERISA's statutory

protections than from an independent contract between the Redmons

and Sud-Chemie."  Id. at 537.  The court also distinguished Meade

and Santino because no other comparable limitations period had

been before the court in those cases.  And "... where a more

closely analogous statute of limitations is available, ... our

sister circuits have declined to apply the statute of limitations

for breach of contract in favor of the more specific provision."

Id. at 536, and collecting cases applying various types of state

limitation statutes to ERISA benefit claims.  The Sixth Circuit

particularly noted the district court's decision in Fallin and

adopted it, finding that its "reasoning is persuasive."  Id. at

537.

After Redmon, the Moody defendants sought partial summary

judgment against the same plaintiff at issue in their prior

motion to dismiss, arguing that <u>Redmon</u> was new intervening law. This Court agreed, finding that Ohio Rev. Code 2305.07 and cases applying that statute were "essentially indistinguishable from the Kentucky law applying its analogous statute discussed in <u>Redmon</u>." (<u>Moody v. Turner</u>, Doc. 84, 11/23/09 Order at 14.) The <u>Moody</u> plaintiff's claim was based on the plan's failure to engage in the whipsaw calculation required by ERISA and corresponding Internal Revenue Code provisions, and not by any breach of the plan's express terms. This Court also found that neither stare decisis nor the decision in <u>West v. AK Steel</u> mandated application of Ohio's 15-year contract statute of limitations. And the Court specifically noted that <u>Fallin</u> involved several ERISA-based statutory claims against a cash balance plan, yet the Sixth Circuit had specifically approved and adopted its reasoning.[2]

Here, Plaintiff urges this Court not to follow its conclusion in <u>Moody</u>. He contends that <u>Meade</u> should apply, and that <u>Redmon</u> improperly attempted to overrule <u>Meade</u>. As this Court previously concluded, <u>Redmon</u> did not overrule <u>Meade</u>, but rather distinguished it because the question of whether a

---

[2] The <u>Fallin</u> district court subsequently entered final judgment, and plaintiffs filed an appeal. That appeal was stayed for a time when one of the defendants sought bankruptcy protection. That defendant was later dismissed, and the parties have recently completed merits briefing. A review of appellant's brief suggests that the issue of the appropriate statute of limitations is squarely raised in the appeal. See Sixth Cir. Dkt. No. 09-5139.

different state statute of limitations might apply simply did not arise in <u>Meade</u>.

Plaintiff also contends that his amended complaint alleges that defendants violated specific plan terms that he argues require the plan to comply with ERISA and the Internal Revenue Code, specifically with the law requiring a whipsaw calculation. He argues that the contract limitations period is therefore proper in this case. Plaintiff identifies three sections of the plan which he alleges defendants have breached:

**(1) Section 1.3,** Provision of Benefits, which states:

> Subject to the corporate action required to provide the benefits and to the Company's obtaining and/or retaining approval by the Commissioner of Internal Revenue of the trust or trusts heretofore or hereafter established under the pension plan of the Company as changed to provide the benefits set forth in this Agreement, as exempt under the applicable provisions of the Internal Revenue Code of 1986 (hereinafter the "Code"), or successors to them, the following benefits shall be provided by the Company or caused to be provided by the Company for the participants.

(Doc. 11, Ex. C.) Plaintiff contends that this language promises the Plan will comply with ERISA's whipsaw calculation. Defendants respond that this provision simply conditions payment of any identified plan benefit upon IRS approval of the plan, required for favorable tax treatment. This passage precedes the description of the benefits to be provided once tax qualification was secured. This conditional language does not promise plan compliance with each and every ERISA requirement. The phrase "as exempt under the applicable provisions of the Internal Revenue

-12-

Code" clearly refers to the tax qualification (e.g., exemption) of the trusts from which benefit payments would be made. This section does not promise nor suggest that the whipsaw calculation in particular, or compliance with ERISA in general, is an express term of the plan that could support a breach of written contract claim.

(2) **Preamble to Appendix B of the Pension Agreement,** stating:

> The Internal Revenue Service requires all pension plans to meet all the applicable requirements of the Employee Retirement Income Security Act of 1974, as amended ("ERISA") as a condition of the issuance of a determination letter under the Internal Revenue Code of 1986, as amended (the "Code"). The following special provisions have been adopted by the Company in order to have the Pension Agreement meet certain additional requirements of ERISA and the Code applicable to all pension plans.

(Doc. 11, Ex. D)  Plaintiff argues this section promises that additional plan provisions were adopted to comply with ERISA's requirements. The "special provisions" that follow are indeed directed at satisfying various ERISA or IRC requirements, such as Article F, which states that an "accrued benefit may be reduced to the extent permitted under section 412(c)(8) of the Code," and Article G which states that "[A]ll distributions from the Plan shall be made in accordance with Section 401(a)(9) of the Code."

IRC § 417(e), which governs the present value determination for lump sum pension payments, is not mentioned in this Appendix. And as with Section 1.3, this preamble does not contain a general

promise to comply with any and all ERISA and IRC requirements beyond the specific provisions listed in the Appendix. Moreover, as was the case in West and in Moody, the fact that the plan was tax-qualified and approved by the IRS is not dispositive of whether or not the plan meets all ERISA requirements. This preamble cannot support a breach of contract claim.

(3) **Basic Agreement Appendix for United Steelworkers of America Local 1016 - Sharon.**

This Appendix states that it was added to the plan after the Armco-AK Steel merger, and the resulting merger of the companies' pension plans. It identifies certain changes in benefit credits to be given to participants who are members of the Sharon Local. Plaintiff cites Section C of this appendix, which states:

> The terms and conditions of the Plan have been modified by this Appendix. Unless specifically provided otherwise, nothing in this Appendix shall modify or supplement any provision of the Plan affecting qualification of the Plan under [IRC] §401(a).

(Doc. 11, Ex. B)

This provision simply confirms that the benefit credit changes identified in the Appendix do not "modify or supplement" any plan term that affects the plan's tax qualification. There is no statement that the plan will comply with ERISA or perform a whipsaw calculation. And as already noted, a plan's tax qualification is of little relevance to determining if the plan may violate ERISA in some fashion.

None of the plan terms Plaintiff cites support a plan-based claim for whipsaw benefits. The Court reached a similar conclusion in Moody, and rejected Plaintiffs' arguments that their whipsaw claims were premised and built upon specific plan terms, in particular that plan's rather complex interest crediting provisions. Because the Court finds that Plaintiff's claim is based upon ERISA's statutorily-required actuarial equivalence and "whipsaw" provisions, the Court concludes that the most analogous statute of limitations is that contained in Ohio Rev. Code 2305.07.

B. <u>Accrual of Plaintiff's ERISA Claim</u>.

As stated above, the date of accrual of an ERISA claim is a question of federal common law. Plaintiff received his lump-sum payment in June 1999, ten years before the <u>Schmidt</u> complaint was filed. Defendants urge the Court to adopt the conclusion it reached in <u>Moody</u>, and find that Plaintiff's claim accrued when he received his lump-sum payment. Plaintiff disagrees, arguing that his claim did not accrue until he learned about whipsaw benefits, at the earliest sometime in 2008.

In his amended complaint (Doc. 16), Plaintiff alleges that he first heard about a whipsaw calculation when the subsequent owner of the Sharon plant began to make voluntary retroactive payments to its retirees sometime in early 2008. (Doc. 23 at ¶51) Plaintiff and a group of AK Steel retirees then met with their

union representatives, who later told Plaintiff that AK Steel informed the union of pending litigation, and that AK Steel would discuss the issue when that matter had been resolved. However, according to the Declaration of Sara Restauri, the union's benefit counsel, she contacted AK Steel after the Supreme Court had denied certiorari in <u>West</u>, and was told that AK Steel had no existing contract with the union, and that AK Steel considered the information requested by the union (about the calculation of retirees' lump sums) to be confidential. (Doc. 17, Declaration of Restauri at 4-5) The <u>Schmidt</u> complaint was filed a few weeks later. Plaintiff argues that these facts demonstrate that his claim did not accrue any earlier than when he first learned about the whipsaw calculation, and more likely in May 2009, when AK Steel finally repudiated the union's inquiries.

The Sixth Circuit held in an ERISA case that "the rule governing when a cause of action accrued is the clear repudiation rule. This rule provides that when a fiduciary gives a claimant clear and unequivocal repudiation of benefits that alone is adequate to commence accrual, regardless of whether the repudiation is formal or not." <u>Morrison v. Marsh & McLennan Companies</u>, 439 F.3d 295, 302 (6th Cir. 2006). <u>Morrison</u> involved a widow's claim for life insurance benefits sought after her husband's death. The husband had applied for the continuation of his employer-sponsored group life insurance upon his retirement,

but the application had been denied because the insurer did not offer that type of coverage in Michigan where the couple lived. The court found that the date of the insurer's denial of the husband's application was the date that the widow's claim for insurance benefits accrued, and not at a later date when her husband passed away, or when she submitted a claim for benefits thereafter.

In Redmon, the court applied the clear repudiation rule to find that plaintiff's claim accrued when the plan stopped paying monthly annuity benefits after plaintiff's husband died. Redmon argued that her claim did not accrue until she asked about survivor benefits and made a claim with the plan. The Sixth Circuit rejected her argument that Morrison required the plan to send her a written denial letter before her claim could accrue, noting that "the cessation of payments was a repudiation of Redmon's survivor benefits. Moreover, this repudiation was clear and unequivocal because Sud-Chemie stopped making monthly payments... [N]o formal or written denial was necessary to put her on notice that her survivor benefits had been denied." Id. at 539. The court also rejected Redmon's argument that her claim did not accrue until she exhausted her administrative remedies, stating that result would turn the administrative exhaustion requirement on its head, and that "her claim might never accrue

-17-

and the statute of limitations would never expire...". <u>Id</u>. at 539-540.

In <u>Moody</u>, this Court found that the plaintiff's claim accrued when he received his lump sum payment from that cash balance plan:

> The Plan's repudiation of any further payment was unequivocal at that time, as the plan terms plainly state that he was entitled to receive his hypothetical account balance. The fact that ERISA requirements for cash balance plans may be complicated does not prevent the accrual of [plaintiff's] claim. To hold otherwise would effectively eviscerate any operative statute of limitations, and permit the assertion of clearly stale claims.

<u>Moody</u>, Doc. 25 at 26 (Order dated Aug. 6, 2008). And after <u>Redmon</u> was issued, this Court reaffirmed its conclusion and rejected plaintiff's motion for reconsideration, finding that the lump sum payment was a clear and unequivocal repudiation of further benefits because a person "receive[s] nothing else from the cash balance plan." <u>Moody</u>, Doc. 84 at 21 (Order dated Nov. 23, 2009).

The district court reached the same result in <u>Fallin</u>, discussed above, where the court concluded:

> Here, there can be no question that Plaintiffs received "clear and unequivocal" notice of the amount of benefits they would be receiving no later than when they received their lump-sum distributions. Any expectation of a sum greater than what was received was "repudiated" at that time, and could not reasonably have been maintained beyond that point. Plaintiffs received no further payments or indication that further payments would be forthcoming during the years between the lump-sum payments and the filing of this action.

-18-

<u>Fallin</u>, 521 F.Supp.2d at 597.

The Sixth Circuit approvingly cited <u>Fallin</u>'s analysis of the accrual issue in <u>Redmon</u>, and rejected Redmon's argument that her claim did not accrue until she had exhausted administrative remedies.

Here, Plaintiff asserts that he had no way of knowing that he might have a claim against Defendants until sometime in early 2008, when another company voluntarily made whipsaw payments to its employees.  Only after he learned of that did he first raise the issue with AK Steel, through his union representatives.  Plaintiff cites several out-of-circuit cases to argue that his claim did not accrue until he first suspected that he may have been entitled to additional benefits.  He cites <u>Dameron v. Sinai Hospital</u>, 815 F.2d 975 (4th Cir. 1987), which was a challenge to a pension plan's formula used to estimate expected Social Security benefits for purposes of pension offsets.  The plan's formula resulted in estimates that were larger than benefits that plaintiff actually received, resulting in a lower pension payment.  Plaintiff filed suit after the state's three-year statute of limitations for breach of contract had expired.  The court noted that the limitation period began, and her claim accrued, when she was notified that the plan would offset her benefits by an amount that she knew was greater than her actual Social Security benefits.  "While she was unaware of the exact

reason for the difference between Sinai's estimate and her actual benefits, she was at that point on notice that she should pursue her rights under ERISA." Id. at 982, n.7.

Rather than assisting Plaintiff, the Court views this result as supporting the argument that receipt of Plaintiff's lump-sum payment is a clear and unambiguous repudiation of any further or additional payment. This is true even though Plaintiff may have been unaware of the exact mechanics of and the law concerning whipsaw claims.

Plaintiff also cites Cotter v. Eastern Conf. Of Teamsters Ret. Plan, 898 F.2d 424 (4th Cir. 1990), but that case is factually distinguishable. In Cotter, plaintiff left his job with the Eastern Conference after 20 years to take a position with the International Brotherhood, a related Teamsters entity. Plaintiff discussed his pension benefits with a Conference official, who gave him a statement calculating his benefits using the date that he left his Conference job as his projected retirement date. The official did not tell Cotter that he was eligible to draw benefits when he left, and Cotter understood that he was not retiring, but simply moving from one Teamsters office to another. The official also described Cotter's Conference pension benefits as "frozen," which he understood to mean he was not eligible for benefits until he actually retired. Thereafter, the Conference sent a yearly statement summarizing

Cotter's vested benefits, which were consistently described as "deferred." Cotter asserted that these statements confirmed his prior understanding that he was not eligible for benefits until he retired from the Teamsters. Plaintiff did so in 1985 and began to draw monthly benefits from the Conference plan.

Two years later, Cotter heard a Conference official testify in an unrelated lawsuit that Cotter could have collected plan benefits when he left the Conference in 1977. Cotter filed suit one year later seeking benefits from that date to his final retirement. The defendants argued that the claim accrued when Cotter left his Conference job because the plan did not pay benefits to him at that time, which amounted to a repudiation of benefits by the plan. The district court and the Fourth Circuit disagreed, finding that the applicable three-year contract limitations period began when Cotter first learned that he had been entitled to draw benefits immediately upon leaving the Conference. But in that case, the Conference plan official specifically told Cotter that his benefits were "frozen," and subsequent statements described his pension benefit as "deferred," statements that obviously lead him to conclude that he was not eligible for and need not apply for benefits until he actually retired from the Teamsters. Here, in contrast, Plaintiff points to no similar affirmative representation by the Plan that might delay the accrual of his cause of action.

Rather, it was abundantly clear when Plaintiff received his lump sum that the Plan would not pay him anything else.

Plaintiff also cites Romero v. Allstate, 404 F.3d 212 (3d Cir. 2005), a challenge to a pension plan amendment concerning the treatment of early retirement benefits. The Third Circuit rejected the district court's finding that the plaintiffs' claims accrued on the date the amendment was adopted, and reversed the district court's dismissal on statute of limitations grounds. The court concluded that typically it is the application of a plan amendment to an individual employee that triggers discovery and accrual of a claim, not the plan's adoption of an amendment. The latter rule "... would impose an unfair duty of clairvoyance on employees, such as those in this case, who allege that an amendment's detrimental effect on them was triggered not at the time of its adoption, but rather at some later time by a subsequent event." Id. at 224. This conclusion was bolstered by plaintiffs' allegation that they were not told about one of the challenged amendments, and by the fact that the record was unclear whether the plan had notified them at all about the second challenged amendment.

In this case, an analogous situation might be presented if Defendants were arguing that Plaintiff's claim accrued when it adopted the cash balance plan. But they are not arguing that should be the rule; rather, the Plaintiff's lump sum payment was

the result of the Plan's application of its terms to Plaintiff's retirement and his election to receive a lump sum in lieu of an annuity.  This is essentially the same result reached by the Third Circuit.

Plaintiff then cites Young v. Verizon's Bell Atl. Cash Balance Plan, 615 F.3d 808 (7th Cir. 2010), which rejected defendant's argument that plaintiff's claim for additional benefits under an express provision of the plan accrued when she received her lump-sum payment.  The case arose over what turned out to be a scrivener's drafting error that resulted in a plan term that purported to require a specified increase in a certain benefit formula to be applied twice, rather than only once as the plan drafters intended.  Plaintiff received her lump sum payment in 1998, but did not make a claim for additional benefits under the disputed provision until 2004, and she filed her lawsuit the next year.  Applying Pennsylvania's four-year contract limitations period, the Seventh Circuit found her claim did not accrue when she received her lump sum payment, because that payment was "not so inconsistent with her current claim for additional benefits as to serve as a clear repudiation." Id. at 816.  The court found her claim accrued when the plan resolved her administrative appeal.

However, the Seventh Circuit more recently distinguished Young in a case almost indistinguishable from this case.  In

Thompson v. Retirement Plan for Employees of S.C. Johnson & Son, Inc., 651 F.3d 600 (7th Cir. 2011), a group of retired employees who elected to receive lump sum payments from their employer's cash balance plan sued to recover whipsaw benefits.  (The Seventh Circuit described the claim as a challenge to the plan's use of equal interest credit and discount rates, which the court described as the "wash calculation."  It is this provision that results in the employee's account balance being equal to the lump-sum payment in violation of ERISA.)  Applying Wisconsin's six-year contract limitations period, the district court held that the sub-class of plaintiffs who received lump sums more than six years prior to the filing of the suit were time-barred.  The Seventh Circuit affirmed, finding that the lump sum payment was an unequivocal repudiation of any entitlement to further plan benefits.  The court specifically rejected plaintiffs' argument that the payments did not start the limitations period because

> ... they could not have understood their injury without
> seeing the full Plan document.  Contrary to the
> plaintiffs' argument, the Plan defendants did not
> improperly conceal the wash calculation in the Plan
> document; they never mentioned it to the participants
> because it was designed to have no effect.  Moreover,
> the plaintiffs did not need to see the wash calculation
> language in the Plan to understand that they had
> received their account balance and nothing more. ...
> The present plaintiffs did not need to reference the
> Plan to understand their injury; they needed to
> reference the ERISA statute and law interpreting it.
> Those sources may be obscure, but that will not be held
> against the defendants.

Id. at 606 and n.8.  The court then distinguished the result in

<u>Young</u> because the "right" and the "clear repudiation" of that

right were both based on the plan's decision to ignore the

scrivener's error and to distribute lump sums that were smaller

than the plan literally (and erroneously) required.  That smaller

payment would not provide notice that the plan

> ... was ignoring one factor in a complex formula in the
> plan document.  Here, in contrast, the lump-sum
> distribution merely needed to show that participants
> would receive their account balance and no more.  That
> simple fact is what made the Plans unlawful.

<u>Id</u>. at 607.  Moreover, the <u>Thompson</u> group of plaintiffs did not

file administrative claims with the plan prior to filing suit,

unlike the plaintiff in <u>Young</u>.  Finding that the <u>Thompson</u>

plaintiffs were raising a statutory claim that did not require

exhaustion, the Seventh Circuit observed that plaintiffs "have

been given a pass on exhausting their internal remedies, and they

now invite us to extend <u>Young</u> by allowing them to slip by with no

accrual date.  We will not thereby approve nullification of the

statute of limitations."  <u>Id</u>.  <u>Thompson</u> fully supports this

Court's conclusion that a whipsaw claim against a cash balance

plan accrues upon payment of the lump sum benefit, and it is

fully consistent with the reasoning in both <u>Redmon</u> and <u>Fallin</u>.

Plaintiff also cites <u>Pikas v. Williams Companies, Inc.</u>, 2010

U.S. Dist. LEXIS 102408 (D. Okla. Sept. 27, 2010), a suit

challenging the employer's failure to include COLA adjustments in

his lump sum pension payment.  The district court, applying

Oklahoma's three-year statute of limitations for statutory
liabilities, concluded that the class members' claims did not
accrue until they exhausted administrative remedies. However,
after the briefing on Defendants' motion in this case was
complete, the district court reconsidered that conclusion when
additional authorities were brought to its attention. In <u>Pikas
v. The Williams Companies</u>, 2011 U.S. Dist. LEXIS 113876 (D. OK.
September 30, 2011), the court found that the claims accrued when
the class of plaintiffs received their lump sum payments that did
not include a COLA. The payment provided plaintiffs adequate
knowledge of the facts underlying their claim, even though they
lacked knowledge of the specific illegality of denying COLA
benefits. (The named plaintiff in that case did question the
lack of a COLA benefit and he diligently pursued his
administrative remedies. His individual claim was found timely,
as it was filed within three years of the plan's final denial of
his claim.) Thus the district court's later decision fully
comports with the results reached by the Seventh Circuit in
<u>Thompson</u>, and with this Court's decision in <u>Moody</u>.

A review of these cases and consideration of Plaintiff's
arguments support the conclusion that Plaintiff's claim accrued
upon receipt of his lump-sum benefit. This conclusion is
bolstered by the documents Plaintiff submits attached to his
declaration that he states he received at the time he retired.

The calculation summary and the June 30, 1999 quarterly statement both clearly and unambiguously state that Plaintiff's lump sum payment would be equal to his account balance. There is no question that Plaintiff's election and acceptance of that lump sum payment is a clear repudiation by the Plan that he is entitled to anything further. (See Doc. 17, Exhibit 5, Gelesky Declaration and attached documents.)

Plaintiff's amended complaint does not rescue his claim. He alleges that he first learned of whipsaw payments sometime in the first part of 2008. But the six-year statute had already expired by 2008. Plaintiff received his lump sum in June or July 1999, and his six-year limitations period expired six years later in 2005.

Plaintiff also contends that it would be unfair to him to bar his claims when the plaintiffs in <u>West</u> and in <u>Schmidt</u> received additional whipsaw benefits. As the Sixth Circuit observed in <u>Winnett v. Caterpillar, Inc.</u>, 609 F.3d 404 (6th Cir. 2010), finding untimely claims by a group of retirees that defendant breached a contractual promise to provide lifetime health care benefits:

> Enforcing a statute of limitation is never easy. The inquiry puts the validity of the claimants' underlying cause of action to the side. And it thus requires us to dismiss all claims, whether valid ones or not, if they were untimely filed.

<u>Id</u>. at 414. This observation fully applies here. Although

enforcement may be difficult, or may be perceived as unfair to late filing plaintiffs, it is also the case that "no one should be forced to defend stale claims." <u>Id</u>.

V.   <u>Motion for Leave to File Sur-Reply</u>

Defendants suggested in their reply brief that the recent Supreme Court decision in <u>Cigna Corp. v. Amara</u>, 131 S.Ct. 1866, ___ U.S. ___ (May 16, 2011) may have overruled the view expressed in <u>West</u> that implied-in-law plan terms are enforceable under ERISA Section 502(a)(1)(B).  Plaintiff sought leave to file a sur-reply to respond to this argument.  (Doc. 20)

The Court's conclusion that Plaintiff's claims are time-barred for the reasons discussed above does not require the Court to delve into that argument.  While the sur-reply goes beyond that issue, it also includes Plaintiff's concession that Counts 2 and 3 of his complaint arise under ERISA and that the six-year statute applies.  The Court will therefore grant the motion in the interests of a complete record.

**CONCLUSION**

For all of the foregoing reasons, the Court finds that the most analogous statute of limitations applicable to Plaintiff's claims is that contained in Ohio Rev. Code 2305.07, applicable to claims based on statutory liability.  The Court finds that Plaintiff's claim accrued when he received his lump sum payment in 1999.  Therefore, his claim filed in July 2009 is untimely,

and Defendants' motion to dismiss is **granted**. Plaintiff's motion for leave to file a sur-reply (Doc. 20) is **granted**.

      SO ORDERED.

      THIS CASE IS CLOSED.

DATED: November 30, 2011      <u>s/Sandra S. Beckwith</u>
                                      Sandra S. Beckwith
                                      Senior United States District Judge